IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. [ ]**

DAVID JENSEN, individually;

    Plaintiff,

v.

Thomas Wright, individually and in his official capacity,

    Defendant.

___

**COMPLAINT AND JURY DEMAND**
___

Plaintiff, David Jensen, by and through his attorneys of Stimson LaBranche Hubbard, LLC, complains against Defendant and requests a trial by jury as follows:

## I. INTRODUCTION

1. Dr. Jensen was falsely charged with twenty-one counts of sexual assault based solely on lies told by the investigating officer, Corporal Thomas Wright. As a result of these false charges, Dr. Jensen lost his business, his reputation, and even his will to live. It took months for Dr. Jensen to expose the lies and clear his name. The financial and emotional damage Dr. Jensen incurred in that time is almost incalculable.

## II. JURISDICTION AND VENUE

2. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is further invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

3. This Court has personal jurisdiction over the named Defendant because he resides in the State of Colorado.

4. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because all the events and/or omissions giving rise to the claims contained in this Complaint occurred within the State of Colorado.

5. Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

6. The state law claims in this matter are brought under the Colorado Law Enforcement Integrity Act, Colo. Rev. Stat. § 13-21-131, and therefore no notice of claims was required under the Colorado Governmental Immunity Act ("CGIA").

### III.  PARTIES

*Plaintiff*

7. At all relevant times, Plaintiff David Jensen was a resident of the State of Colorado and a citizen of the United States of America.

*Defendant*

8. At all relevant times, Defendant Thomas Wright was a citizen of the United States and a resident of Colorado. Defendant Wright was an agent and/or employee of the Basalt Police Department and was responsible for procuring the prosecution of Plaintiff. At all material times, Defendant was acting under color of state law.

## IV. STATEMENT OF FACTS

### *Background*

9. Dr. Jensen is a chiropractor. After graduating from the University of Minnesota, Dr. Jensen worked in Texas providing care to a wide range of patients, including professional and Olympic athletes. In the 1990s, Dr. Jensen moved to the Roaring Fork Valley and threw his energy into building his own world class practice. Dr. Jensen served as a treating doctor for the World Cup of Skiing for many years. He also worked for the Olympic Training Center in Colorado Springs, the ESPN Winter X-Games, the Dallas Cowboys, and the Miami Dolphins. For eight years, Dr. Jensen was named the Best Chiropractor in the Local's Choice Awards.

10. Over the years, Dr. Jensen developed a large and devoted following. By the time of the events underlying this case, Dr. Jensen's business, WIN Health Institutes ("WIN"), had two locations, employed multiple people, and was seeing many patients per day. WIN and Dr. Jensen were thriving.

11. After providing chiropractic treatment, Dr. Jensen often referred patients to three massage therapists who maintained independent contractor relationships with WIN. One of those massage therapists was Nate Gordon.

### *One of Mr. Gordon's Clients Accuses Mr. Gordon of Sexually Assaulting Her During a Massage*

12. In November 2021, a woman named Trisha Markkula received a massage from Mr. Gordon. Immediately after the massage, Ms. Markkula scheduled four more massages with Mr. Gordon.

13. Ms. Markkula had previously received chiropractic care from Dr. Jensen. She had also previously been the plaintiff in many lawsuits. After scheduling the additional massages with

3

Mr. Gordon, she came up with a plan to sue Mr. Gordon and Dr. Jensen.

14. Ms. Markkula contacted a plaintiff's lawyer. The plaintiff's lawyer advised her how to proceed.

15. Ms. Markkula contacted Corporal Wright of the Basalt Police Department. She told Corporal Wright that Mr. Gordon had digitally penetrated her during the massage without her consent.

16. Police then arrested Mr. Gordon and charged him with sexual assault.

### *Additional Allegations Against Mr. Gordon*

17. Local newspapers published stories about the charges against Mr. Gordon. In the wake of those news stories, some additional women contacted the Basalt Police and alleged that Mr. Gordon had not draped them appropriately, had gotten too close to the vaginal area, or had brushed his hand against the vagina during a massage.

### *"I'm Trying to Build as Big of a Case as I Can"*

18. Corporal Wright was assigned to investigate the allegations. From the very beginning, Corporal Wright said, "I'm trying to build as big of a case as I can."

19. At Corporal Wright's direction, the Basalt Police Department issued a press release with the newspaper, produced a video for release to the public, and posted the video to Facebook about the charges against Mr. Gordon and encouraged other women to make allegations against Mr. Gordon.

20. At Corporal Wright's direction, the Basalt Police Department launched a campaign to cold call all of Mr. Gordon's massage clients and encourage them to make allegations against Mr. Gordon. Corporal Wright obtained Dr. Jensen's entire patient list and systematically called,

4

or had other officers call, those patients. Corporal Wright estimated he personally called at least 90 women and that was only 3 or 4 pages of the client list. Corporal Wright described Dr. Jensen's patient list as a "huge stack."

21. Corporal Wright knew that his attempted recruitment of accusers in this case was inappropriate. Part of the recruitment included Corporal Wright speaking to a local therapist who worked with many women as her patients who also were patients at the WIN Institute. Corporal Wright, without having the women sign releases of information or without requesting the therapist get HIPAA compliant releases, shared information about the investigation and got names of other accusers from the therapist. Corporal Wright took his notes from his contact with the therapist and placed only those notes in a file that he kept under his desk amidst a stack of papers. This secret file was never disclosed to the defense and was located only after Corporal Wright left the Basalt Police Department in the middle of this case.

22. Also discovered after Corporal Wright left was the fact that of the hundreds of calls made to Dr. Jensen's client list, the only ones that were recorded and preserved were women who reported some type of uncomfortable or level of inappropriate experience (some following suggestive interviewing techniques and coaching from police). The 100+ calls that were made where the women described nothing inappropriate or positive things about Dr. Jensen were, in some cases, not disclosed to the defense and, in many cases, not preserved.

23. By the end of Corporal Wright's recruitment campaign, Mr. Gordon had been charged with twenty-one counts of sexual misconduct involving ten accusers.

### *Corporal Wright Lies to Prosecutors to Get Them to Charge Dr. Jensen*

24. But the charges against Mr. Gordon were not enough for Corporal Wright. He

wanted an even bigger case. He wanted to charge Dr. Jensen with helping Mr. Gordon commit each of those twenty-one counts.

25. To charge Dr. Jensen with helping Mr. Gordon commit those offenses (complicity), Corporal Wright needed evidence, with respect to each offense in each count, that Dr. Jensen knew the offense was going to occur, intended to help Mr. Gordon commit the offense, and actually did something to help Mr. Gordon commit the offense.

26. But Corporal Wright had a problem. Dr. Jensen did not refer many of those women to Mr. Gordon. Often, Dr. Jensen wasn't even involved. There was absolutely nothing to suggest that Dr. Jensen was referring certain of his patients to Mr. Gordon so that Mr. Gordon could assault them. Corporal Wright had no evidence to support charges against Dr. Jensen.

27. So Corporal Wright came up with a story. Corporal Wright told Eagle County prosecutors, including, but not limited to, Heidi McCollum, Johnny Lombardi, and Amy Padden (the "Eagle County prosecutors"), that Dr. Jensen had created a "hypersexual" environment at WIN where women were routinely objectified and joked about; that Dr. Jensen exhibited egregious conduct towards women at WIN; that Dr. Jensen had a practice of referring "hot" female patients to Mr. Gordon instead of the other massage therapists; and, most importantly, that *each* of Mr. Gordon's accusers had been *specifically referred* to Mr. Gordon by Dr. Jensen.

28. Not one of these claims was true. Corporal Wright knew that none of these claims were true.

29. There is not a single witness in the case who said that Dr. Jensen identified certain women patients as "hot" or "attractive" and then directed those women to Mr. Gordon.

30. There was not a shred of evidence that each of Mr. Gordon's accusers had been

6

specifically referred to Mr. Gordon by Dr. Jensen. Corporal Wright knew this claim was false because many of Mr. Gordon's accusers told Corporal Wright and other officers in police interviews that they had not been referred to Mr. Gordon by Dr. Jensen. Instead, they provided other explanations as to how they came to Mr. Gordon.

31.     No one ever said that Dr. Jensen created a hypersexual environment at WIN, engaged in egregious conduct towards women, or created an atmosphere that led to sexual assault. In fact, the opposite is true – Dr. Jensen had several female employees, acupuncturists and massage therapists who worked in the clinic and spoke positively about Dr. Jensen.

32.     Corporal Wright had access to all of Dr. Jensen's computers, books and electronic devices. There was not a shred of evidence of Dr. Jensen saying anything inappropriate about women, communicating with Mr. Gordon about anything other than mountain biking, or gaining any kind of incentive for allegedly directing the "hot" women to Mr. Gordon. This evidence did not exist because it did not happen – except for in Corporal Wright's imagination. Aside from Corporal Wright's false claims, there was no basis for charging Dr. Jensen with any offense.

33.     But the Eagle County prosecutors did not know that.

34.     The Eagle County prosecutors also did not know what Corporal Wright did not tell them. Corporal Wright knew but did not tell the Eagle County prosecutors that many of Mr. Gordon's accusers weren't referred by Dr. Jensen but instead came to Mr. Gordon on referrals from other people or doctors, because he was the first available, or because they arranged the massage themselves. Corporal Wright led the prosecutors to believe that Dr. Jensen had directed ten or more women to Mr. Gordon because they were "hot" so that Mr. Gordon could sexually assault them. This false allegation, created from thin air by Corporal Wright, led the prosecutors

7

to initiate grand jury proceedings and continue to prosecute the case against Dr. Jensen for months.

35. Corporal Wright knew but did not tell the Eagle County prosecutors that WIN's front-desk employee had told him that after Ms. Markkula's alleged assault Ms. Markkula was relaxed, smiling, and talkative; stayed for at least ten minutes to reschedule future appointments with Mr. Gordon because her work schedule had changed; and told the front-desk employee that she did not have her wallet and she would tip Mr. Gordon double next time. Corporal Wright did not tell the prosecutors that Ms. Markkula was being treated by Dr. Jensen as part of a personal injury lawsuit at the recommendation of her lawyers and that Ms. Markkula had spoken with her personal injury lawyer before she contacted Basalt Police.

36. Corporal Wright knew but did not tell the Eagle County prosecutors that he was just spinning a made-up story to build a bigger case.

### *The Prosecutors Take the Case to the Grand Jury*

37. Corporal Wright successfully deceived the Eagle County prosecutors. The Eagle County prosecutors decided to take the case to a grand jury based on Corporal Wright's lies and omissions. Without those lies and omissions, the case against Dr. Jensen never would have begun. It would have never gone any further than Corporal Wright's imagination.

38. In the grand jury proceedings, Corporal Wright deceived the grand jury with the same lies and omissions that he had used to deceive the Eagle County prosecutors.

39. As a result, the grand jury indicted Dr. Jensen as a complicitor on every single one of the counts against Mr. Gordon.

40. Police arrested Dr. Jensen and held him in custody. Dr. Jensen was released on bond on August 18, 2022. On August 18, 2022, as Dr. Jensen appeared from the jail, in handcuffs

8

and a bright orange jail jumpsuit, Assistant District Attorney Johnny Lombardi asked for a high bond to be set and told the Court facts from the story that Corporal Wright had spun. DA Lombardi said that Dr. Jensen's "egregious behavior toward female patients of the clinic led to an environment in which Nathaniel Gordon had access to sexually assault women. . . [Dr. Jensen] is a licensed professional whose conduct in operating the WIN Institute was in total violation of the guiding principles of proper chiropractic treatment. It's also shown that he directed what he termed as 'hot' and 'attractive' women to Mr. Gordon directly for massages, who then were sexually assaulted." Each of these statements was untrue and based entirely on the lies that Corporal Wright told the Eagle County Prosecutors.

41.     On August 19, 2022, the Aspen Times quoted DA Lombardi's statements he made in open court – direct quotes that DA Lombardi learned from Corporal Wright. The Aspen Times published all of the charges against Dr. Jensen: sexual assault – false medical exam, which is punishable by two years to life in the Department of Corrections, a parole period of ten years to life, probation of ten years to life, and a requirement for sex offender registration; nine counts of sexual contact – false medical exam, which is either a felony or a misdemeanor, also punishment by indeterminate life sentences if felonies; and eleven counts of invasion of privacy which carries up to a year in the jail. DA Lombardi, again relying on Corporal Wright's false statements, told the court that the DA's office would be seeking consecutive sentencing. In other words, that the DA's office was seeking a life sentence for Dr. Jensen. DA Lombardi described Dr. Jensen's behavior as "outrageous" and leading to all the women being sexually assaulted. The Aspen Times also reported that day that Dr. Jensen, in his orange jumpsuit, put his hands up to his face as the judge read the charges and penalties.

9

42. Following this hearing, the Colorado Department of Regulatory Agencies contacted Dr. Jensen and his license to practice chiropractic in Colorado was suspended, pending the outcome of the case. Dr. Jensen was ultimately forced to close his practice, losing hundreds of thousands of dollars, putting many people out of work, leaving many people in the community in pain without his treatments, and destroying his reputation.

43. The prosecutors in the case relied upon Corporal Wright's made-up story as the case progressed, parroting Corporal Wright's false statements to the Court, to defense counsel and continuing with Dr. Jensen's prosecution. None of Dr. Jensen's indictment, arrest, confinement, prosecution, reputational damage, news stories repeating Corporal Wright's lies, loss of livelihood, damage to his business, and loss of liberty in connection with the criminal proceedings against him would have happened without Corporal Wright's lies to the Eagle County Prosecutors, omissions to the Eagle County Prosecutors, repetition of those lies and omissions, and continued failure to correct those lies and omissions.

### *Prosecutors Learn About the Lies and Dismiss the Case against Dr. Jensen*

44. Dr. Jensen spent significant sums paying lawyers to investigate and evaluate the case against him. Dr. Jensen and his counsel discovered that the case against Dr. Jensen was built on nothing but lies.

45. Dr. Jensen and his counsel then described Corporal Wright's lies and omissions in meetings with the Eagle County prosecutors, written materials provided to the Eagle County prosecutors, and pleadings. Defense counsel also presented the Court with argument to dismiss many of the charges. The Court dismissed several counts because the counts were outside the statute of limitations and others because there was a lack of probable cause. Following the meeting

10

with defense counsel that delineated the lies Corporal Wright had told to prosecutors, prosecutors dismissed ten more counts "in the interests of justice." The prosecution then, in a procedurally unusual move, sought to dismiss and re-file the remaining counts so that Dr. Jensen's counsel would have the opportunity to challenge Corporal Wright in an adversary process, unlike the process in front of a grand jury. DA Lombardi explained to the trial judge that it would best serve the interests of justice for Corporal Wright to be subject to cross-examination by defense counsel on whether there was probable cause for the remaining counts.

46. On December 28, 2022, defense counsel explained to the Court that Corporal Wright had made a series of false statements, hid exculpatory evidence and kept a secret file with relevant documents away from the prosecution and the defense.

47. DA Lombardi responded that defense counsel had notified the prosecution of the "issue" with Officer Wright and detailed Corporal Wright's lies and omissions in a memo to the prosecution. DA Lombardi went on to say that the DA's office considered that as to why it was considering dismissing the case. DA Lombardi also agreed that defense counsel was raising a valid point with respect to Corporal Wright concerning what he may have done.

48. Ultimately, the prosecution moved to dismiss all charges against Dr. Jensen. The court granted the motion on February 2, 2023. The day the prosecution ultimately dismissed the final remaining counts from the 21-count indictment was the day before Corporal Wright was to take the stand and testify with respect to the defense's Motion to Dismiss Counts Based on Material Misrepresentations Made to the Grand Jury.

49. Corporal Wright never contacted the Eagle County prosecutors to correct the lies and omissions that led to Dr. Jensen's indictment, arrest, and continued prosecution. Even after

the case was dismissed, Corporal Wright wrote a published letter to the Aspen Times that maintained that he had told the truth but failed to address any of the many lies identified in court, pleadings, and discussions with the prosecution.

### *Jury Acquits Mr. Gordon on ALL Counts*

50. The case against Mr. Gordon went to trial in October of 2023. After a seven-day trial, the jury acquitted Mr. Gordon on all counts.

### *The Damage to Dr. Jensen's Name and Business Was Done*

51. As a result of Corporal Wright's lies and omissions, Dr. Jensen was forced to shut down his business and stop practicing as a chiropractor for almost a full year. During this time, he lost hundreds of thousands of dollars in income. He incurred significant financial debt. He was forced to pay significant amounts of interest on that debt. Multiple news outlets reported on the allegations against Dr. Jensen. Those news outlets repeated Corporal Wright's lies, writing that Dr. Jensen was accused of referring "hot" women to Mr. Gordon so that he could sexually assault them. Dr. Jensen's reputation suffered irreparable damage. Dr. Jensen was facing the specter of spending the rest of his life in prison if convicted on these false charges. He contemplated suicide on multiple occasions. Even once the charges were all dismissed and Dr. Jensen was able to reopen his business, his reputation, emotional state, patient volume and income were not the same. Internet searches still return results with Dr. Jensen's mug shot and articles about the false charges. Dr. Jensen's business, emotional state, and reputation continue to suffer to this day.

## V. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Fourth and Fourteenth Amendment Violations – Malicious Prosecution**
**(42 U.S.C. § 1983)**

52. Dr. Jensen hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

53. At all times relevant to the subject matter of this Complaint, Corporal Wright was acting under the color of state law in his capacity as an officer with the Basalt Police Department and within the scope of his employment.

54. Corporal Wright deceived the Eagle County prosecutors into believing there was a case against Dr. Jensen by concealing evidence and lying to them about the facts of the case.

55. Corporal Wright's lies and omissions caused the Eagle County prosecutors to seek a grand jury indictment against Dr. Jensen and continue to prosecute Dr. Jensen.

56. Because Corporal Wright never corrected those lies and omissions, those lies and omissions caused the grand jury indictment and the continued prosecution of Dr. Jensen.

57. All charges against Dr. Jensen were dismissed, so the original action terminated in Dr. Jensen's favor.

58. Without Corporal Wright's lies and omissions, there was no probable cause to support Dr. Jensen's indictment, arrest, confinement, or continued prosecution.

59. Corporal Wright was motivated not by a desire to collect and analyze evidence and bring to justice a person thought to have committed a crime, but by the desire to bring the biggest case possible, enhance his reputation as a sexual assault investigator, and other improper motives.

60. Corporal Wright made the above actions and omissions knowingly, maliciously, willfully, and wantonly.

61. Corporal Wright's conduct violated clearly established rights of Dr. Jensen of which a reasonable person in Corporal Wright's position knew or should have known.

62. Corporal Wright's conduct caused the violation of Dr. Jensen's Fourth Amendment right to be free from unreasonable seizures, his Due Process right to not be deprived of liberty as the result of the fabrication of evidence by a government officer acting in an investigative capacity, and his Due Process right not to be prosecuted without probable cause.

63. Corporal Wright's lies and omissions resulted in the unconstitutional seizure of Dr. Jensen and deprived Dr. Jensen of his liberty. Dr. Jensen was arrested. He was fingerprinted, photographed, and held in custody. Even once he was released, Dr. Jensen was prohibited from practicing as a chiropractor as a result of the fabricated evidence. Dr. Jensen was forced to shutter his business as a result of the fabricated evidence. He was required, under penalty of further confinement, to appear repeatedly in court and comply with numerous pretrial supervision conditions. These pretrial conditions included a prohibition on travel anywhere outside of the state, a prohibition on possessing any firearm, and a requirement to stay in contact with pretrial services.

64. As a legal and proximate result of Corporal Wright's actions or omissions described in this Complaint, Dr. Jensen has suffered and continues to suffer reputational damage, humiliation, lost earnings, interest on debt incurred while he wasn't able to work, emotional distress, loss of enjoyment of life, significant attorneys' fees in defending the criminal case, additional expenses, and other significant injuries, damages, and losses.

65. Dr. Jensen is entitled to attorneys' fees and costs pursuant to 42 U.S.C.§ 1988, pre-judgment interest and costs as allowable by federal law.

66. Dr. Jensen is also entitled to punitive damages because Corporal Wright's actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## SECOND CLAIM FOR RELIEF
### Fourth and Fourteenth Amendment Violations – Fabricating Evidence
### (42 U.S.C. § 1983)

67. Dr. Jensen hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

68. Corporal Wright knowingly fabricated evidence. Corporal Wright fabricated evidence that each of the alleged victims had been specifically referred to Mr. Gordon by Dr. Jensen. Corporal Wright fabricated evidence that Dr. Jensen specifically referred "hot" women to Mr. Gordon. Corporal Wright fabricated evidence that Dr. Jensen maintained a hypersexual work environment in which women were the subject of inappropriate commentary. Corporal Wright fabricated evidence that Dr. Jensen engaged in egregious conduct towards women.

69. This fabricated evidence was used against Dr. Jensen. Corporal Wright presented the fabricated evidence to Eagle County prosecutors. Eagle County prosecutors relied on the fabricated evidence in deciding to seek a grand jury indictment. Eagle County prosecutors continued to rely on the fabricated evidence, and Corporal Wright's failure to correct it, in continuing to prosecute the case against Dr. Jensen.

70. Without the fabricated evidence, there was no probable cause for the case against Dr. Jensen.

71. Corporal Wright's conduct caused the violation of Dr. Jensen's Fourth Amendment right to be free from unreasonable seizures, his Due Process right to not be deprived of liberty as the result of the fabrication of evidence by a government officer acting in an investigative capacity, and his Due Process right not to be prosecuted without probable cause.

72. Corporal Wright's use of fabricated evidence resulted in the unconstitutional seizure of Dr. Jensen and deprived Dr. Jensen of his liberty. Dr. Jensen was arrested. He was fingerprinted, photographed, and held in custody. Even once he was released, Dr. Jensen was prohibited from practicing as a chiropractor as a result of the fabricated evidence. Dr. Jensen was forced to shutter his business as a result of the fabricated evidence. He was required, under penalty of further confinement, to appear repeatedly in court and comply with numerous pretrial supervision conditions. These pretrial conditions included a prohibition on travel anywhere outside of the state, a prohibition on possessing any firearm, and a requirement to stay in contact with pretrial services.

73. As a legal and proximate result of Corporal Wright's actions or omissions described in this Complaint, Dr. Jensen has suffered and continues to suffer reputational damage, humiliation, lost earnings, interest on debt incurred while he wasn't able to work, other emotional distress, loss of enjoyment of life, significant attorneys' fees in defending the criminal case, additional expenses, and other significant injuries, damages, and losses.

74. Dr. Jensen is entitled to attorneys' fees and costs pursuant to 42 U.S.C.§ 1988, pre-judgment interest and costs as allowable by federal law.

75. Dr. Jensen is also entitled to punitive damages because Corporal Wright's actions were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

**THIRD CLAIM FOR RELIEF**
**Violations of State Constitutional Rights**
**(Colo. Rev. Stat. § 13-21-131)**

76. Dr. Jensen hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

77. At all relevant times, Corporal Wright was a "peace officer" within the meaning of Colo. Rev. Stat. § 24-31-901(3) and were employed by a local government.

78. Corporal Wright is not entitled to qualified immunity in an action alleging a violation of this state constitutional provision. C.R.S. Section 13-21-131(2)(b) provides: "Qualified Immunity is not a defense to liability pursuant to this section."

79. Dr. Jensen had a protected interest under Colorado Constitution, article II, §§ 7 and 25 in maintaining his liberty, being free from arrest and prosecution without probable cause, being free from arrest and prosecution based on fabricated evidence, and being free from unconstitutional seizure.

80. Corportal Wright lied to the Eagle County prosecutors and deliberately failed to present them with exculpatory information in order to secure criminal charges against Dr. Jensen. Corporal Wright never corrected those lies and omissions. Rather, he stood by them and repeated them as Dr. Jensen was indicted, arrested, and prosecuted.

81. As a result of Corporal Wright's lies and omissions to the Eagle County prosecutors, Dr. Jensen was unlawfully arrested and held in custody; he was subjected to unlawful restrictions on his liberty under the conditions of his pretrial release; he was subjected to continued prosecution and threat of an indeterminate life sentence in prison; he lost his business; he had to stop practicing as a chiropractor; he lost income; he incurred significant expenses, including

17

attorney fees and interest on debt; his reputation suffered irreparable damage; and his business suffered irreparable damage.

82. Corporal Wright did not act upon a good faith and reasonable belief that Dr. Jensen was guilty of the offenses with which he was charged. A reasonable person, under the same or similar circumstances and with knowledge of the true facts, would not have believed that the Dr. Jensen was guilty of any of the offenses with which he was charged.

83. The acts or omissions of Corporal Wright were the moving force behind, and the proximate cause of, Dr. Jensen's damages.

84. Corporal Wright's conduct described in this Complaint was attended by circumstances of malice, or willful and wanton conduct, which Corporal Wright must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Dr. Jensen.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendant, and grant all relief as allowed by law and equity, including, but not limited to:

(a) Declaratory, equitable, and injunctive relief, as appropriate;

(b) Economic losses on all claims in an amount to be determined at trial;

(c) All available compensatory and consequential damages, including, but not limited to, all available damages for pain and suffering, physical, mental and emotional distress, humiliation, and all other non-economic and economic damages available under the law;

(d) Punitive damages on all claims as allowed by law and in an amount to be determined at trial;

(e) Attorneys' fees and costs, including expert witness fees;

(f) Pre- and post-judgment interest as appropriate; and

(g) Any further relief at law or equity that this Court deems just and proper.

**PLAINTIFF RESPECTFULLY REQUESTS TRIAL BY JURY.**

Respectfully submitted this 16th day of August, 2024.

*s/ Kate Stimson*
Kate Stimson
Carey Bell
Stimson LaBranche Hubbard, LLC
1652 Downing Street
Denver, CO 80218
Tel./Fax: 720.689.8909
stimson@slhlegal.com
bell@slhlegal.com

*Attorneys for Plaintiff*

**Certificate of Service**

I certify that on August 16, 2024, I electronically filed the foregoing *Complaint and Jury Demand* with the Clerk of Court using the CM/ECF system.

*s/ Andres L. Varas*
Andres L. Varas
